An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-502

Filed 18 February 2026

Cumberland County, No. 22CR051093-250

STATE OF NORTH CAROLINA

v.

LESTER DAVID SINCLAIR, JR.

Appeal by defendant from judgment entered 19 December 2024 by Judge James Floyd Ammons Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 27 January 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Ashley B. Weathers, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace Washington, for defendant.*

ARROWOOD, Judge.

Lester David Sinclair, Jr. ("defendant") appeals from judgment entered after trial where the jury found him guilty of felonious larceny and first-degree trespass and attaining habitual felon status. For the following reasons, we affirm.

I. Background

Duane Edwin Hoyt, Jr. ("Mr. Hoyt") owns a storage unit behind his barbershop, which he encloses behind a locked chain-link fence and in which he keeps various personal property. On 30 January 2022, Mr. Hoyt filed a police report after he arrived at the storage unit to find the fence damaged and his trailer missing. Fayetteville Police Department Detective Jason Westbrook ("Detective Westbrook") of the Property Crimes Investigation Unit in Cumberland County viewed Mr. Hoyt's security footage capturing the theft, showing an individual cutting the fence, entering the fenced property in a blue Pathfinder, and driving away with Mr. Hoyt's trailer. Fayetteville Police Department Officer Ronnie Hedrick later viewed two images from the video, showing the individual, his distinctive boots, and his Pathfinder's distinctive rims, and associated the vehicle with defendant.

After receiving this information, Detective Westbrook went to defendant's address, which was about a mile from Mr. Hoyt's storage unit and had been recorded in a police database. At the residence, Detective Westbrook recognized both the blue Pathfinder and defendant from the security footage. Defendant told Detective Westbrook that the Pathfinder belonged to his mother and that he sometimes lent the vehicle to strangers. Defendant also said that he knew the person who took the trailer and would request its return. While at the residence, Detective Westbrook also identified the distinctive boots and photographed them.

On 6 November 2023, defendant was indicted for felonious larceny and misdemeanor first-degree trespass and indicted as a habitual felon. The matter came

before the Cumberland County Superior Court for trial on 18 December 2024.

At trial, both Mr. Hoyt and Detective Westbrook testified. Mr. Hoyt testified that he did not know defendant or give anyone permission to either use the trailer or break into the fenced property. He testified that the trailer was never returned, that its approximate value was $2,500.00, and that this dollar amount is the lowest he would have taken in a hypothetical sale. In addition to testimony about the investigation, Detective Westbrook testified on redirect to his familiarity with similar trailers. He testified that he owns a similar trailer and that he recently explored purchasing a new one, surmising that he would have offered approximately $2,000.00 to $2,500.00 for a used trailer like Mr. Hoyt's, based on his knowledge of the present market.

At the close of the State's evidence, the Court denied defendant's motion to dismiss the charges for insufficient evidence. Defendant presented no evidence. After the jury charge, the State asked for an additional jury instruction defining fair market value, which the Court provided over defendant's objection while repeating the instruction for felonious larceny. The jury then found defendant guilty of felonious larceny and misdemeanor first degree trespassing.

In the second phase of the trial, the jury found that defendant was a habitual felon. Judge Ammons sentenced defendant to 67 to 93 months. Defendant gave oral notice of appeal.

II.     Discussion

- 3 -

On appeal, defendant argues that three errors occurred at trial. First, he contends that the above testimony about the trailer's value was inadmissible. Alternately, if the testimony was admissible, he contends it was an abuse of discretion to allow it. Second, he contends that the State offered insufficient evidence of the trailer's value, so the trial court should have granted his motion to dismiss the felonious larceny charge. Third, he contends that the additional instruction defining fair market value gave the issue undue prominence. We discuss each argument in turn.

### A.      Testimony Regarding the Trailer's Value

Where a party objects to the admission of evidence, this Court reviews the evidence's admission for abuse of discretion. *State v. Clawson*, 291 N.C. App. 234, 240 (2023). "An abuse of discretion occurs when the trial court's ruling is 'manifestly unsupported by reason.'" *State v. Enoch*, 261 N.C. App. 474, 487 (2018) (citing *State v. Graham*, 200 N.C. App. 204, 207 (2009)). The party must show that without the evidence's admission, it is reasonably possible that the jury would have reached a different result. *Id.*

Larceny of goods with a value exceeding $1,000.00 is a Class H felony. N.C.G.S. § 14-72 (2023). Defendant is correct that "value" here means the goods' fair market value, rather than the price at which the owner would have sold the goods. *State v. Haney*, 28 N.C. App. 222, 222–23 (1975). The State does not dispute this. Fair market value describes the property's " 'market value' or its 'reasonable selling

price,' at the time and place of the theft, and in the condition in which it was when the thief commenced the acts culminating in the larceny." *State v. Dees*, 14 N.C. App. 110, 112 (1972). "[A]n estimate has been held to be some evidence of value." *State v. Cotton*, 2 N.C. App. 305, 311 (1968). "It is not necessary that a witness be an expert in order to give [an] opinion as to value." *Id.* Accordingly, the stolen property's rightful owner can testify about its value even if their knowledge of a similar item's typical market rate would not qualify them as an expert witness if they were not the property's owner. *State v. Dallas*, 205 N.C. App. 216, 222 (2010).

Arguing that it called for speculation, defense counsel objected to the question, "And had you wanted to sell that trailer on January 30, 2022, what's the bottom dollar you would have taken for it?" Defendant now argues that it was erroneous to permit Mr. Hoyt to testify to the amount he would have taken in the event of the trailer's sale, claiming that if his objection were sustained, "the jury would not have heard Mr. Hoyt's testimony about the value of the trailer."

This is plainly incorrect. First, in response to an earlier question about the condition of the trailer and the cost of previous improvements, Mr. Hoyt had already testified: "I would say it was probably valued at $2,500 at the time that it was stolen." Defense counsel made no objection to that answer, and accordingly the jury was properly able to hear and consider it. Mr. Hoyt's answer was an estimate by the stolen property's owner, which is properly admissible to provide "some evidence of value." *Cotton*, 2 N.C. App. at 311. Furthermore, the State then asked an additional

question to clarify the matter, asking Mr. Hoyt, "Any question in your mind that the trailer was worth $2,500?" Mr. Hoyt responded, "No question." This exchange occurred without objection. Accordingly, the State properly introduced Mr. Hoyt's testimony on the matter both before and after the challenged question, and the trial court did not err in either overruling defendant's objection or in permitting the State to elicit this testimony.

Defendant next argues that Detective Westbrook was not qualified as an expert and had no more insight than the jury into the value of trailers, so it was erroneous to permit him to testify on the subject. Indeed, defendant objected on grounds of insufficient foundation after Detective Westbrook said he was "familiar with the type of pull-behind trailer that was stolen" and the State replied, "And in your opinion, what was the value?" The trial court overruled the objection and Detective Westbrook testified that its "generalized value" was "$2,000 or more."

Given the vagueness of Detective Westbrook's claimed familiarity on direct examination, defendant is correct that there was a limited foundation for this non-expert testimony. However, defendant has not shown that, if the trial court's decision was indeed erroneous, it was also "manifestly unsupported by reason" and therefore an abuse of discretion. *Enoch*, 261 N.C. App. at 487. To the contrary: even on this limited foundation, it would have been wholly reasonable for the trial court to understand that Detective Westbrook, who had already testified on his abundant experience investigating thefts, would have been personally aware of the general

value of his investigation's subject matter. Given that he was the investigating officer, it would not have been "manifestly unreasonable" to permit admission of his opinion in this context.

Furthermore, defendant has not demonstrated that the jury would have reached a different result but for that testimony. On cross-examination, defense counsel explicitly asked Detective Westbrook its own question about the value of trailers, without challenging the foundation for the witness's opinion: "And would you agree that trailers depreciate over time?" On redirect, this question properly opened the door to the State's questions which set forth in greater depth a foundation for Detective Westbrook's opinion. At this time, he testified that he currently owns a very similar trailer and had recently looked at the fair market prices for comparable new and used trailers, laying a sufficient foundation for a non-expert opinion on the value of Mr. Hoyt's trailer. This personal experience would no doubt have given Detective Westbrook additional insight into the matter, and "[t]he basis or circumstances behind a non-expert opinion affect only the weight of the evidence, not its admissibility." *State v. Rahaman*, 202 N.C. App. 36, 49, *disc. rev. denied*, 364 N.C. 246 (2010). Accordingly, with this foundation presented, Detective Westbrook's estimate of the trailer's market value was properly admissible, and it was the jury's task to evaluate the credibility and weight of that testimony.

Therefore, as to the admission of the testimony by Mr. Hoyt and Detective Westbrook as to the trailer's value, defendant has failed to show any abuse of

discretion by the trial court.

B.     Defendant's Motion to Dismiss

The Court reviews a trial court's denial of a motion to dismiss *de novo*.  *State v. Chavis*, 278 N.C. App. 482, 485 (2021).  To survive a motion to dismiss based on insufficiency of the evidence, the State must present substantial evidence of each essential element of the charged offense and that the defendant was the perpetrator of the offense.  *State v. Fritsch*, 351 N.C. 373, 378, *cert. denied*, 531 U.S. 890 (2000).  Substantial evidence is such relevant evidence that a reasonable person might accept as adequate to support a conclusion.  *State v. Blake*, 319 N.C. 599, 604 (1987).  "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Fritsch*, 351 N.C. at 379 (citation and internal quotation marks omitted).  Thus, if the record contains substantial evidence "to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Golder*, 374 N.C. 238, 250 (2020) (internal quotation marks omitted).  Drawing all reasonable inferences therefrom, the evidence must be considered in the light most favorable to the State.  *Id.*

The only required element of the charged offenses for which defendant argues the State failed to provide substantial evidence was that the value of the stolen property exceeded $1,000.00.  N.C.G.S. § 14-72(a). To support the conclusion that the stolen property was worth more than $1,000.00, the State is not required to provide

direct evidence but must at least ensure that "the jury is not left to speculate as to the value of the item." *State v. Wright*, 273 N.C. App. 188, 191 (2020) (cleaned up), *aff'd*, 379 N.C. 93 (2021). In felonious larceny cases, a witness's opinion as to the stolen property's value is "sufficient to require submission to the jury of an issue as to [the] defendant's guilt." *State v. Sergakis*, 223 N.C. App. 510, 512 (2012), *disc. rev. denied*, 366 N.C. 438 (2013) (quotes omitted).

Here, the State presented testimony from two witnesses on the trailer's value, and both agreed it was more than twice the $1,000.00 amount necessary to charge defendant with felonious larceny. Considering the evidence in its totality and in the light most favorable to the state, a reasonable juror clearly could have inferred that the trailer was worth over $1,000.00. Accordingly, there was substantial evidence of this element of the offense, so the court was duty-bound to submit the charge of felonious larceny for the jury's consideration. Therefore, the trial court properly denied defendant's Motion to Dismiss, and we find no error on this issue.

## C. Jury Instruction

Defendant asserts that it was prejudicial error for the trial court to issue a jury instruction defining fair market value "after the jury began deliberations." Defendant takes no issue with the legal adequacy of the definition itself, but only its delivery, as it allegedly placed "an undue emphasis on this element of the crime," creating "a reasonable possibility that the jury may have reached a different result without this instruction."

Where a party's request for a specific jury instruction raises a question of law, we review the trial court's decision *de novo*. *State v. Edwards*, 239 N.C. App. 391, 393 (2015). The trial court's instructions to the jury are of the utmost importance to a verdict's legal integrity, because they are intended to clarify the issues to be deliberated, to distinguish extraneous matters, and to explain both the law arising from the evidence and that law's proper application. *State v. Harvell*, 236 N.C. App. 404, 410 (2014), *disc. rev. denied*, 368 N.C. 297 (2015).

Our State's statutes explicitly permit courts to issue, in open court and on the record, additional instructions after the jury retires for deliberation, when an erroneous instruction must be withdrawn or corrected, when an ambiguous instruction should be clarified, or when the original instructions overlooked an essential point of law. N.C.G.S. § 15A-1234(a)-(d) (2023). Before issuing such instructions, the court must inform the parties and offer an additional opportunity to be heard, particularly where "the additional instructions change, by restriction or enlargement, the permissible verdicts of the jury." N.C.G.S. § 15A-1234(c). Crucially, in doing so, the court "may also give or repeat other instructions to avoid giving undue prominence to the additional instructions." N.C.G.S. § 15A-1234(b). If the record presents "no reasonable cause to believe the jury was misled or misinformed," this Court will find the jury instructions sufficient. *State v. Wirt*, 263 N.C. App. 370, 376 (2018). Accordingly, defendant must show not only that the jury instructions were erroneous, but also that the error "was likely, in light of the entire charge, to mislead."

*Id.*

The record before us shows that the trial court followed the appropriate procedure in this case. Here, the jury exited the courtroom at 12:40 p.m. after the initial instructions. Immediately, the court asked the parties whether there were any requests for additional instructions, to which the State responded affirmatively. Outside of the hearing of the alternate jurors, the State asked for an instruction defining fair market value. Over the defense's objection, the court allowed the instruction in its discretion and asked for the jury to be brought in again. The jury re-entered the courtroom at 12:43 p.m. At this time, the court restated the relevant element of felonious larceny, adding the clarifying definition to ensure the jury understood that the worth of stolen property is determined by its fair market value:

> "Ladies and gentlemen, let me give you some additional instructions. I gave you the instructions about the charge of felonious larceny and there were six elements and that one of those elements was that the property was worth more than $1,000. I should have also said that fair market value is the price that a willing buyer would pay to a willing seller for an item in question on the open market."

The court took pains to place this definition in the appropriate legal context, so as not to overemphasize it: "All of the instructions I gave you are important. You are to take all the instructions I gave you, plus this one additional instruction as to value, together as a whole in your deliberations."

Because the question of the trailer's value had arisen during the evidence, it was clearly appropriate for the State to ensure that the jury had the correct definition

of fair market value in mind for deliberations, so the instruction was proper to clarify the earlier instruction in case it had been ambiguous. Furthermore, the timing was hasty and efficient, allowing the parties deliberation on the request and bringing the jury back to the courtroom in just a matter of minutes. This record does not present a situation where a jury is interrupted for additional instructions after already deliberating at great length and the timing might give cause for concern about the undue prominence of those instructions. Here, it is not even apparent that the jury made it to the deliberation room before they were summoned back. In fact, when the jurors returned to the courtroom, a mere three minutes had elapsed since their exit. Lastly, the court wisely chose to explicitly underscore the importance of all its instructions, so as not to give the additional definition any inappropriate prominence. Accordingly, defendant has failed to give us any reasonable cause to believe the court misled this jury. Therefore, we find no error.

## III. Conclusion

For the above reasons, we find no error and affirm the trial court's judgment.

NO ERROR.

Judges ZACHARY and WOOD concur.

Report per Rule 30(e).