IN THE MATTER OF: GERALD LEE LAMBERT, JR.

No. 7926DC723

(Filed 1 April 1980)

**Infants § 20— undisciplined child—placement in private facility at county's expense**

In considering the "available resources" for placement of an undisciplined child pursuant to former G.S. 7A-286, the trial court was not confined to a consideration only of government operated resources but had the authority to place an undisciplined child in a privately operated facility for an indefinite stay at the county's expense.

APPEAL by respondent Mecklenburg County from *Black, Judge*. Order entered 24 April 1979 in District Court, MECKLENBURG County. Heard in the Court of Appeals 10 January 1980.

On petition by his mother, following a hearing on 29 March 1979, Gerald Lee Lambert was adjudicated an undisciplined child. His juvenile court counsellor recommended out-of-home placement for Gerald Lee, and the trial court ordered him placed in Alexander's Children's Home, a private placement facility. Custody was assigned to the Mecklenburg County Department of Social Services (DSS). He ordered that Gerald's mother arrange funding for his placement at Alexander's through "Title XX" funding. At a subsequent hearing on 23 April 1979, DSS reported that Gerald

had been accepted for placement at Alexander's, but that in order for the cost of placement to be paid through Title XX funds, he would have to take his place on a waiting list (for placement) with other similarly situated children in the custody of DSS. The trial court found that Gerald was in need of specialized therapeutic placement and psychological residential treatment and found Alexander's to be the most appropriate treatment facility for Gerald. He found that Gerald's mother was financially unable to arrange for his care at Alexander's. In the order, the court returned custody to the mother, ordered Gerald to be admitted to Alexander's on 11 June 1979, and ordered that cost of such admission be charged to Mecklenburg County pursuant to G.S. 7A-286. The parties stipulated that the cost of care at Alexander's is $1,098 per month for the first six months and $787 per month thereafter. The minimum stay is six to eight months, and the maximum stay is about two years. The trial court's order made no provision as to the length of stay.

*Ruff, Bond, Cobb, Wade & McNair, by William H. McNair and Frederick W. B. Vogel, for Mecklenburg County.*

*Hasty, Waggoner, Hasty, Kratt & McDonnell, by Robert D. McDonnell, guardian ad litem.*

WELLS, Judge.

Appellant Mecklenburg County raises two basic questions for our review. The first challenges the authority of the trial court to place Gerald Lee in Alexander's Children's Center for an indefinite stay at the County's expense. The essence of the County's argument is that the trial court did not properly balance the interest of the child and the interest of the State in considering "available resources" for placement, and that the statutory scheme does not contemplate psychological treatment, but only examination or evaluation of such cases.

The statutory authority under which the trial court acted is found in Chapter 7A, Article 23 of the General Statutes.[1] A

---

1. This Article, encompassing G.S. 7A-277 through G.S. 7A-289, was repealed as of 1 January 1980. 1979 N.C. Sess. Laws, ch. 815, § 1. As of this date, dispositional authority of the District Court in juvenile cases is regulated by Article 52 of Chapter 7A which grants the District Court broad discretionary authority similar to that provided under former G.S. 7A-286.

careful reading of the provisions of Article 23 indicates a clear legislative intent to give trial judges considerable latitude and discretionary authority in dealing with delinquent, dependent, neglected, or undisciplined children. The following pertinent provision of G.S. 7A-285 sets the tone:

* * *

The juvenile hearing shall be a simple judicial process. . . .

The court may continue any case from time to time to allow additional factual evidence, social information or other information needed in the best interest of the child. . . .

At the conclusion of the adjudicatory part of the hearing, the court may proceed to the disposition part of the hearing, or the court may continue the case for disposition after the juvenile probation officer or family counsellor or other personnel available to the court has secured such social, medical, psychiatric, psychological or other information as may be needed for the court to develop a disposition related to the needs of the child or in the best interest of the State. The disposition part of the hearing may be informal, and the court may consider written reports or other evidence concerning the needs of the child. . . .

In all cases, the court order shall be in writing and shall contain appropriate findings of fact and conclusions of law.

Continuing in this spirit of granting broad discretionary authority to the trial court, G.S. 7A-286 provided in pertinent part:

The judge shall select the disposition which provides for the protection, treatment, rehabilitation or correction of the child after considering the factual evidence, the needs of the child, and the available resources, as may be appropriate in each case. . . .

The County argues that in this case, the trial court picked the "best" resource available for Gerald Lee's placement—that the term "available resources" should be construed narrowly to include only *government operated* resources. Appellant maintains

that the term should not be construed to include privately operated institutions, especially expensive ones such as Alexander's Children's Center. Appellant argues that while such a placement might well serve the best interest of the child, it cannot serve the best interest of the State because it burdens the State with unreasonable expense. Implicit in the County's argument is the proposition that "available resource" must be limited in a way that will fairly weigh and consider not only the State's ability to meet the cost of treatment involved, but the equitable apportionment of resources among children who need placement or treatment as well.

There is, of course, considerable merit to the County's position. We agree that the trial court has a duty to balance the interest of the child with that of the State. This is the fundamental thrust of juvenile management. It nevertheless remains, however, that the scales of justice in these cases have been designed by the legislature to be measured by the pound, not by the ounce. The legislature simply has not seen fit to attempt to tie the hands of trial judges in these cases. It has instead given them every reasonable tool the use of which does not assault our sense of due process. While we are cognizant of the risk of depletion of the County's resources inherent in the placement of jurisdictional children in expensive, privately operated facilities, we nevertheless believe that the legislative intent was that the trial courts have such an available resource as an alternative. While the statutory provisions make frequent reference to State institutions as appropriate for placement or treatment, we find nothing in the statute which rules out, precludes, or denies to the trial court resort to privately owned facilities in appropriate cases.

This brings us then to the next question raised by the County—whether there were sufficient findings supported by the evidence to support the placement ordered by the trial court. We believe that question deserves an affirmative response. We believe that, on the whole, there were sufficient findings based on the evidence to support the placement ordered by the court.

Affirmed.

Judges HEDRICK and MARTIN (Robert M.) concur.